Thomas J. Nolan (CA SBN 48413)
Daniel B. Olmos (CA SBN 235319)
Jonathan Baum (CA SBN 303469)
NOLAN BARTON BRADFORD & OLMOS LLP
600 University Avenue
Palo Alto, CA  94301
Tel. (650) 326-2980
Fax (650) 326-9704

Michael L. Brown (GA SBN 088875)
William R. Mitchelson, Jr. (CA SBN 124066)
Leanne Kantner (GA SBN 270935)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
Tel. (404) 881-7000
Fax (404) 881-7777

Yitai Hu (CA SBN 248085)
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA  94303
Tel. (650) 838-2000
Fax (650) 838-2001

Counsel for Defendant
Hao Zhang

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 5:15-cr-00106-EJD |
| Plaintiff, | |
| vs. | **DEFENDANT HAO ZHANG'S NOTICE OF MOTION AND MOTION FOR BILL OF PARTICULARS** |
| HAO ZHANG, | Date: September 26, 2016 |
| Defendant. | Time: 1:30 p.m. |
| | Place: Courtroom 4, 5th floor |
| | Dept: Hon. Edward J. Davila |

## NOTICE OF MOTION

PLEASE TAKE NOTICE that on September 26, 2016 at 1:30 p.m., or as soon as the matter may be heard before the Honorable Edward J. Davila, defendant Hao Zhang will and hereby does move the Court for an order requiring the government to issue a bill of particulars providing the information set forth below, or as the Court may direct in its discretion.  This motion is based upon

the instant notice, the attached memorandum of points and authorities, the records in this case, and upon such arguments made at the hearing.

## MEMORANDUM AND POINTS OF AUTHORITIES

### I.    INTRODUCTION

Professor Hao Zhang ("Professor Zhang" or "Zhang") is charged in the Superseding Indictment ("Indictment") with 14 counts of theft of a trade secret, 14 counts of economic espionage, one count of conspiracy to commit theft of trade secrets, and one count of conspiracy to commit economic espionage, in violation of 18 U.S.C. §§ 1831 and 1832.  The Indictment lists 23 purported trade secrets belonging to Avago Technologies, Inc. ("Avago") and Skyworks Solutions, Inc. ("Skyworks").  Throughout the Indictment, the United States repeatedly alleges that Zhang e-mailed Avago and Skyworks trade secrets to other co-conspirators and filed patent applications containing Avago and Skyworks trade secrets.  The Indictment, however, does not adequately identify the trade secrets that Professor Zhang is alleged to have stolen with sufficient detail for Zhang to identify the conduct or alleged trade secret underlying the charged offense. And, the documents produced in the case provide no clarity as to the alleged trade secrets.  In fact, the voluminous discovery only adds to the confusion regarding what alleged trade secrets Professor Zhang is accused of stealing.

Professor Zhang and his counsel have reviewed the Indictment in detail, attempting to connect various overt acts to the substantive counts, as well as the discovery provided by the government in an attempt to understand the specific structures, processes, specifications or items that the government claims were trade secrets.  As set forth in more detail below, the information provided by the government in the Indictment and the discovery it has provided to the defense is simply insufficient for Professor Zhang to identify the precise technologies, designs, or information that it claims were trade secrets.  The Court, therefore, should exercise its discretion to grant a bill of particulars in this case.

## II.      LEGAL STANDARD

In *Bartell v. United States*, 227 U.S. 427 (1913), the Supreme Court stated: "It is elementary that an indictment, in order to be good under the Federal Constitution and laws, shall advise the accused of the nature and cause of the accusation against him, in order that he may meet the accusation and prepare for his trial . . . ." *Id.* at 431; *see also Wong Tai v. United States*, 273 U.S. 77, 80-81 (1927) (an indictment must "advise the defendant of the nature and cause of the accusation in order that he may meet it and prepare for trial"). A corollary of that principle, Federal Rule of Criminal Procedure 7(f), permits a defendant to seek a bill of particulars to obtain sufficient information about the charges against him so that the defendant can prepare his defense. A bill of particulars "is designed to apprise the defendant of the specific charges being presented to minimize danger of surprise at trial, to aid in preparation and to protect against double jeopardy." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983). The Ninth Circuit has recognized that a bill of particulars is appropriate when the indictment does not contain sufficient detail for a defendant to prepare his defense. *See Id.* at 1054 ("A motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense"); *see also United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (finding that the "purposes of a bill of particulars are to minimize the danger of surprise at trial and to provide sufficient information on the nature of the charge to allow preparation of a defense."). "The decision to require a bill of particulars is within a trial court's discretion, which is broad under these circumstances." *United States v. Cristobal*, No. 5:11-CR-00355-EJD, 2015 WL 4128824, at *3 (N.D. Cal. July 8, 2015) (citing *Long*, 706 F.2d at 1054).

## III.      ARGUMENT

In this case, the complexity of the technology at issue and the paucity of detail in the Indictment justify the granting of a bill of particulars. The technology at issue in the case — Film

3

Bulk Acoustic Resonators — is highly technical and well developed.  The basic structure of an FBAR filter has been known in the industry for more than 30 years.  *See* Declaration of Michael L. Brown ("Brown Dec.") at ¶3.  Many companies develop and manufacture this technology and it is studied at universities all over the world.  There are over 3,600 patents and patent applications about Film Bulk Acoustic Resonators dating back to the early 1990s.  *See* Declaration of Timothy R. Watson ("Watson Dec.) at ¶2.  Avago has no monopoly on the development, innovation, or manufacturing of FBARs.

Professor Zhang is an expert in FBAR design and manufacturing.  He obtained his doctorate from the University of Southern California in 2006 and then worked for several years at Skyworks before returning to China to teach at Tianjin University, one of the nation's premier technical universities.  Brown Dec. at ¶4.  To defend himself against allegations that he stole Avago or Skyworks trade secrets in the area of FBAR design and development, Professor Zhang will have to show that the patents he filed or emails he sent did not contain Avago or Skyworks trade secrets.  For some allegations, he may present evidence about his patents and compare them to specific elements of Avago's and Skyworks's alleged trade secrets—showing that his work was fundamentally different.  For other allegations, he may present evidence showing that Avago's and Skyworks's alleged trade secrets were not, in fact, trade secrets but rather were well-developed technology and publicly known within the industry.  To develop and present either defense, Professor Zhang must be notified of the specific trade secrets that he is alleged to have stolen.  And yet, the Indictment is chock-full of summary allegations that offer little or no information about the specific trade secrets that the government claims Professor Zhang and his co-conspirators stole.  The government, for example, alleges repeatedly that detailed and complex patent applications or documents Professor Zhang emailed contained "Skyworks trade secrets" or "Avago trade secrets" without identifying the precise technology or design that the government claims was a trade secret other than in the most cursory manner.  In other allegations, the government alleges that Avago

4

had manufacturing processes that were "a particular manner proprietary to Avago" or "fabrication process steps" developed by Avago.  In still other allegations, the government describes an alleged trade secret in such generic terms that could not possibly constitute a trade secret in this highly developed field.  These broad allegations are fundamentally unfair and insufficient to inform Professor Zhang of the allegations against him.  If this were a civil case, the alleged trade secrets would have to be defined with "reasonable particularity," which is with "sufficient particularity to limit the permissible scope of discovery by distinguishing the trade secrets from matters of general knowledge in the trade or of special knowledge of those persons ... skilled in the trade."  *See* Cal. Civ. Proc. Code § 2019.210 (West); *Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835, 33 Cal. Rptr. 3d 901, 907 (2005).  The same detail about the alleged trade secrets that is required in civil disputes where only money is at issue should be required from the government in this case where Professor Zhang's liberty is at stake.

As discussed in further detail below, the patent applications that the government cites in most of the substantive counts are 20 or 30 pages long, with detailed drawings and lengthy descriptions of every aspect of an invention.  The United States cannot possibly suggest that the entire patent is an Avago trade secret.  This is especially true given the facts that (1) much of the information in both Professor Zhang's patents and Avago's similar patents was already in the public domain, and (2) the United States patent office granted several of Professor Zhang's patents and Avago's similar patents, thus indicating unique innovation between the patents.  There must be some subcomponent of Professor Zhang's patent applications that the government alleges is a trade secret—some manufacturing process, design detail, or technological innovation.  And, yet the Indictment fails to identify the precise trade secret.

Professor Zhang is not attempting to obtain any information beyond which he is entitled to under the law.  The Indictment contains definitions for 23 alleged Avago and Skyworks trade secrets, 75 overt acts, and 32 substantive counts.  The sheer number of allegations, however, does

not mean that the Indictment provides sufficient details for Professor Zhang to understand the precise trade secrets that he is alleged to have stolen so that he can mount his defense. Nor does the voluminous discovery—over 975,000 pages—that the government has provided defense counsel. *See* Brown Dec. at ¶5. Courts in this district have found that "requiring [the] defendant to search through a mountain of discovery does not satisfy the obligation to adequately advise [the] defendant of the charges against him." *United States v. Chen*, No. C 05-375, 2006 WL 3898177, at *3 (N.D. Cal. Nov. 9, 2006); *See also United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263, at *3 (N.D. Cal. Apr. 15, 2010) (granting in part a request for a bill of particulars where the government produced over 70,000 pages of discovery). And, having reviewed the discovery in detail, defense counsel remains unable to identify the trade secrets that Professor Zhang was alleged to have stolen.

Professor Zhang, therefore, seeks a bill of particulars requiring the government to identify the specific trade secret at issue in certain substantive counts as well as certain overt acts.[1]

### Requests for Bill of Particulars Regarding Substantive Counts.

<u>Counts 3, 13, 18, and 28</u>

The government contends that Professor Zhang and his co-conspirators stole an Avago trade secret that the government identifies as "Avago's Temperature Compensation ('Tempco') project technology." The government claims that Professor Zhang committed this theft and economic espionage when he filed patent applications in the United States and China involving

---

[1] Professor Zhang does not seek a bill of particulars on the seven counts alleging theft of trade secrets and economic espionage involving Avago's P-cells and Design Kits, specifically Counts 7, 8, 10, 15, 22, 23, and 30. The allegations in the Indictment regarding these counts specify the exact file that the government believes contains Avago's trade secrets. And, each document contains only the technology identified in the substantive count.

6

temperature compensation technology. *See* Indictment at Counts 3 and 18 (theft and espionage counts arising from Zhang's filing of patent application in United States); Indictment at Counts 13 and 28 (theft and espionage counts arising from Zhang's filing of Chinese patent application). In one overt act, the government alleges that Zhang's patent application in the United States was "based on stolen Avago Temperature Compensation ("Tempco") project technology." Indictment at ¶30(xx). Neither the substantive counts nor the overt act provide any further detail about the alleged trade secret at issue. As the only other allegation involving this purported trade secret, the Indictment defines Avago's Temperature Compensation Layer (which Professor Zhang assumes is the same thing as Avago's Temperature Compensation project technology) as: "Avago placed a temperature compensation layer between two electrodes as part of its FBAR design, and found that a smoother and more gradual slope avoided cracking and enhanced performance." Indictment at ¶18(f). This detail cannot possibly identify the alleged trade secret. Placing a temperature compensation layer within a filter to control variation of the filter frequency with temperature is widely known in the FBAR industry. *See* Brown Dec. at ¶6. Similarly, having a gradual slope to the compensation layer to avoid cracking of any subsequently deposited layers on top of the compensation layer is also fundamental manufacturing knowledge. *Id*.

Indeed, Professor Zhang's initial patent application was rejected by the United States Patent and Trademark Office ("USPTO" or "PTO") for obviousness, indicating that his proposed design of placing a temperature compensation layer in the top electrode had already been done by others. Watson Dec. at ¶3. Professor Zhang revised his patent application to add vias or trenches in the compensation layer and the Patent Office granted his patent. *Id*. It took Professor Zhang two years to get the patent approved. The discovery provided to the defense indicates that Avago

also filed a patent on its "Tempco" technology.[2]   In preparing for trial, counsel has learned that Avago actually filed two patent applications on "Tempco," one in 2010 and another in 2012. Watson Dec. at ¶4.  The United States Patent Office rejected both Avago's first and second patent applications because of older patents held by Avago and Panasonic.   Thus, the PTO's records indicate that: (i) Avago's "Tempco" project falls largely within a publicly known space, (the older Avago and Panasonic patents); and (ii) the PTO did not find Professor Zhang's patents and applications sufficiently similar to Avago's to rely on them in rejecting Avago's patent applications.  *Id*.

So, what part of Professor Zhang's patent application allegedly contained an Avago trade secret?   Was it the vias and trenches that Professor Zhang added to get his patent application granted?   The Indictment does not mention vias and trenches but, perhaps, that is what the government claims.  If so, Professor Zhang may defend himself by showing that Avago never considered this design feature in its patent applications.  *Id*. at ¶5. Or was it the fundamental idea of putting a temperature compensation layer within a filter?  This innovation, however, was already in the public domain, as evidenced by previous patents and various articles discussing temperature compensation in FBAR filters.  Brown Dec. at ¶6.  Or, was it the idea of using a gradual slope in the manufacturing process to avoid cracking? This technique is a common practice in microchip manufacturing.   Or was it some other detail in Professor Zhang's highly technical patent application; an application that the Patent Office reviewed for more than two years?  The point is that Professor Zhang must be permitted the opportunity to focus his defense on the precise trade secret that the government contends he stole.   The government, therefore, must be required to

---

[2] The reference to the Avago patent involving Tempco technology was included in one of the search warrant affidavits produced by the government.

identify the precise trade secret at issue.  Without this information, Professor Zhang cannot defend himself in a focused and effective manner against the four substantive counts (and the conspiracy allegation) that he stole Avago's trade secret related to temperature compensation.

As part of this motion, Professor Zhang has obviously provided additional details about his defense strategy and trial preparation in regards to the alleged theft of temperature compensation trade secrets.  He has done so in order to explain better his argument that a bill of particulars should be granted in this case.  Professor Zhang used this alleged trade secret as an example simply because temperature compensation is the subject of the first substantive count.  The same argument holds true for each and every one of the other alleged trade secrets.  Professor Zhang needs to protect his defense strategy and, therefore, has not provided as many details as to each other alleged trade secret at issue.

Counts 4 and 19

The government also alleges that Professor Zhang stole Avago trade secrets related to "Coupled Resonator Filters ('CRF') technology."   The government contends that he committed theft and economic espionage of this trade secret when he filed a patent application in the United States.  *See* Indictment at Counts 4 and 19 (theft and espionage counts arising from Zhang's filing of patent application in the United States).  The government includes the same allegation in two overt acts but provides no additional information about the alleged trade secret.  Indictment at ¶30(yy), (jjj).  The only other reference to CRF technology is the government's definition of the technology: "Avago's CRF Project was a method for manufacturing an acoustically-coupled device for FBARs.  The *particular manner* in which Avago manufactured the device enhanced the

performance of its FBARs."[3] Indictment at ¶18(g) (emphasis added). Apparently, the government contends that Avago had a "particular manner" of manufacturing this device. But, neither the Indictment nor any of the discovery discloses or describes the "particular manner." What is it? How can Professor Zhang defend himself against a claim that he stole it, when the government has not disclosed what it is?

Professor Zhang's patent application was 31 pages long with a detailed discussion of the technology he sought to patent. *See* Brown Dec. at ¶7. Is Avago's "particular method" contained somewhere in it? If so, where? It is fundamentally unfair to require Professor Zhang to defend himself against a claim that he stole something as of yet unidentified. The government must be required to disclose the "particular method" that it contends constituted an Avago trade secret so that Professor Zhang can understand the charge against him and prepare his defense.

Counts 5 and 20

As with the other alleged trade secrets, the government contends that Professor Zhang stole Avago trade secrets and committed economic espionage involving Avago's Silicon Carbide technology when he filed a patent application in the United States. *See* Indictment at Counts 5 and 20 (theft and espionage counts arising from Zhang's filing of patent application in theUnited States regarding silicon carbide). No overt acts provide any additional information about this alleged trade secret. Instead, they merely claim that Professor Zhang filed his patent "based upon stolen Avago Silicon Carbide technology." Indictment at ¶30(zz). And, as with the CRF allegations discussed above, the government's attempt to define the trade secret offers no help.

---

[3] The Indictment explains that CRF stands for Coupled Resonator Frequencies in the section about Avago's Trade Secrets. CRF is later used to define Coupled Resonator Filters. We assume these definitions are referring to the same alleged trade secret. Our understanding is that the technology is called Coupled Resonator Filters.

The government merely alleges that "Avago's Silicon Carbide Project combined two passivation layers, or coatings, of silicon carbide in a *particular manner* proprietary to Avago." Indictment at ¶18(f) (emphasis added). Again, how can Professor Zhang defend himself against an allegation that he stole a "particular manner" when that "manner" is not disclosed? Is it how the passivation layers are designed? How they relate to each other? Where they are in the filter? Or is the trade secret the fact that the passivation layers are made of silicon carbide? Or, rather than being about the design, is it a "particular manner" of how the layers are manufactured? The government does not say, and the defense cannot possibly know.

Certainly at trial the government will have to disclose to the jury the "particular manner" that it claims Professor Zhang stole (if that is what they allege). Professor Zhang should not be required to prepare a defense to each and every possible allegation his attorneys can imagine. He has a constitutional right to be notified of the allegations so that he can prepare his defense. The general accusation that Professor Zhang stole *something* related to silicon carbide is not enough to provide sufficient notice of the offense charged in this highly technical and precise industry.

<u>Counts 6 and 21</u>

In Counts 6 and 21 of the Indictment, the government alleges that Professor Zhang stole Skyworks trade secrets and committed economic espionage involving Composite Bulk Acoustic Wave Resonator technology when he filed a patent application in the United States regarding this technology. *See* Indictment at Counts 6 and 21 (theft and espionage counts arising from Zhang's filing of patent application in United States regarding composite bulk acoustic wave resonator technology). The related overt act offers no further detail about this technology. Indictment at ¶30(ggg). And, the Indictment offers no definition of this alleged trade secret. Indeed, the Indictment says nothing else about it whatsoever.

Skyworks does not appear to have filed a patent application on this alleged technology so Professor Zhang cannot look there for any insight. *See* Watson Dec. at ¶6. Likewise, a search of the discovery in this case produces no results for documents from Skyworks regarding its Composite BAW Resonator technology. Brown Dec. at ¶8. Included in the discovery is a statement by a former Skyworks employee that, when shown a copy of Professor Zhang's patent, he remarked that the patent "related" to BAW filters that Skyworks worked on but that he would "need to carefully read it in order to see the details" and to be sure of his assertion. *Id*. at ¶9. How can Professor Zhang defend himself against this allegation when there is no explanation as to the alleged trade secret in the Indictment or the discovery? Is he required to defend every statement in the patent application identified in the Indictment? Certainly not. If the Skyworks employee said that he would have to review the details of the patent application to compare it to his company's work on BAW filters, how can Professor Zhang be expected to do this when he does not even have access to Skyworks prior work? The government must be required to identify the Skyworks technology or innovation that it claims Professor Zhang stole.

<u>Counts 9 and 24</u>

The government also alleges that Professor Zhang stole Avago trade secrets and committed economic espionage when he filed patent applications in China related to Wings technology. *See* Indictment at Counts 9 and 24 (theft and espionage counts arising from Zhang's filing of patent applications in China regarding Wings technology). These same allegations are repeated in two overt acts that concern the United States and Chinese patent applications but offer no other details. Indictment at ¶30(ww), (ccc). Another overt act also alleges that Professor Zhang emailed a 36-page Avago PowerPoint presentation about Avago's Air Bridge and Wings technology. *Id.* at ¶30(kk). The overt act does not allege that the PowerPoint presentation contained any trade

secrets, ███████████████████████████████████   The Indictment

further defines Avago's Wings and Undercut Design Features as: "Avago's 'Wings' feature

derived its name from the wing shape of one layer. Avago developed Wings simultaneously with

its Air Bridge. Wings had a specific feature called an 'undercut.'  Avago perfected a wet-etching

process to create the undercut and specifically designed its FBARs to have a slight undercut."

Indictment at ¶18(d).

From this information, it is impossible for Professor Zhang to identify the trade secret he

is alleged to have stolen.  The Indictment claims that Avago perfected a wet-etching process and

that was part of its trade secret for the Wings technology.  Professor Zhang does not mention wet-

etching in his patent application.  *See* Brown Dec. at ¶10.  So what is the alleged trade secret that

the government is accusing Professor Zhang of stealing?  If it is not wet-etching, is it the undercut

feature?  Is that unique to Avago?  There were over 500 pieces of prior art cited by Avago or the

Patent Office during prosecution of Avago's patent, an indication that Avago knew the technology

at issue was well developed with many aspects already known to the public.  *See* Watson Dec. at

¶7.  How can Professor Zhang defend himself against these allegations without further detail?  He

needs to understand the specific alleged trade secret in the Wings technology that he is alleged to

have stolen, less the government plan to argue that the every aspect of the technology and

manufacturing process were protected by Avago as trade secrets.  And if they were, Professor

Zhang must understand that the government intends to prove that expansive definition of these

alleged trade secrets at trial.

In assessing this motion, it is important to note that both Professor Zhang's and Avago's

Wings patents were granted by the US Patent Office, a clear indication that each patent had unique

claims about the technology.  *Id*. at ¶8.   How can Professor Zhang determine the hidden trade

secret in Avago's patent application or the use of Avago's alleged trade secret in his patent application when the USPTO, the government agency whose sole job is to analyze patents, found that the technology claimed in Professor Zhang's patent was unique to that in Avago's? He cannot. Without clarification from the government, Professor Zhang will be forced to prepare a defense against every detail in Avago's and his own patent applications. He will be forced to hire an expert to analyze each specific claim in the patent applications and do significant research to determine what part of those claims was known to the public. Certainly, the Constitution requires the government to provide more specificity.

Counts 12 and 27

The government next alleges that Professor Zhang stole Avago trade secrets and committed economic espionage when he filed patent applications in China related to Air Bridge technology. *See* Indictment at Counts 12 and 27 (theft and espionage counts arising from Zhang's filing of patent application in China regarding Air Bridge technology). These same allegations are repeated in two overt acts that concern the United States and Chinese patent applications but offer no other details. Indictment at ¶30(qq), (fff). The Indictment defines Avago's Air Bridge Design Feature as: "Avago's 'Air Bridge' connected the top electrode on an FBAR to the electrical pad. Avago's Air Bridge contained unique features, such as allowing kinks to remain and machining the air bridge to match the contours of the sloped layers beneath it. Avago's Air Bridge enhanced the performance of its FBARs by improving the amount of energy an FBAR reflected back." Indictment at ¶18(c).

Aside from the sparse definition of the alleged trade secret, the only information available to Professor Zhang are his patent application, Avago's patent application, and the 36-page Power Point presentation. From these items, it is impossible to determine the alleged trade secrets

14

concerning Air Bridge technology.  Does the United States contend that it was the decision to connect the top electrode to the electrical pad?  Or is it allowing "kinks" to remain?  Or is it "machining the air bridge to match the contours of the slope layers beneath it?"  The Indictment does not specify.  But, depending on what the government intends, Professor Zhang may adopt different defenses, perhaps showing that the design feature of connecting the top electrode to the electrical panel was already well known or showing that his patent does not include "kinks."  The point is that without additional information about the alleged trade secret, Professor Zhang cannot possibly develop a defense at trial.

And, as in the case of the Air Bridge technology, the US Patent Office approved both Avago's and Professor Zhang's patents, indicating that they contain distinct innovations.  *See* Watson Dec. at ¶8.   Without an order requiring the government to identify the alleged trade secret at issue, Professor Zhang will not be able to defend against these allegations.

Counts 11 and 26

Counts 11 and 26 of the Indictment allege that Professor Zhang stole Skyworks trade secrets and committed economic espionage when he emailed a "Skyworks PowerPoint presentation entitled 'Temperature Compensated BAW Resonator with Embedded Silicon Dioxide Layer underneath Piezoelectric Layer,' marked 'Skyworks Solutions Confidential and Proprietary.'"  Indictment at Count 11.  The PowerPoint presentation is 10 pages long. ████ ████████████████████████████████████████████████████ ████████████████████████████████████████████.  *See* Brown Dec. at ¶11.  The Indictment does not identify the alleged trade secret within the presentation.  The related overt act provides no further detail about the alleged trade secret contained within the PowerPoint presentation.  *See*

Indictment at ¶30(eee).  Neither the Indictment nor the discovery provide any other information that might identify the trade secret.

What is the alleged trade secret in this PowerPoint presentation?  Does the title of the presentation indicate that the secret was temperature compensation via the use of silicon dioxide layers? The Indictment does not identify this as one of Skyworks trade secrets.  That technology is only mentioned in other allegations about Avago.  It would also be odd to claim that placing a temperature compensation layer of silicon dioxide in a filter is a trade secret when the government's own Indictment indicates that both Avago and Skyworks were working on this well-known technology.  So, what is the trade secret in the PowerPoint presentation?  Only the government can answer those questions.  Professor Zhang cannot defend himself against these allegations unless he receives those answers.

Counts 14 and 29

In Counts 14 and 29 of the Indictment, the government alleges that Professor Zhang stole Avago's trade secrets and committed economic espionage involving Avago's FBAR design layouts when he received an email attaching a PowerPoint presentation created by the MEMS Group at Tianjin University called "Mask FE901 Design and Layout Review."  Indictment at Count 14.  One overt act repeats this same allegation.  Indictment at ¶30(kkk).  The Indictment does not identify the alleged trade secret in the presentation.  ████████████████ ██████████████████████████████████████████████████████ ████████████████████████████  *See* Brown Dec. at ¶12.   Which of those technologies are related to Avago's Design Layouts?  Which slide in the PowerPoint presentation contains Avago's trade secrets?  And what are those trade secrets?

16

The Indictment also defines Avago's alleged trade secret involving FBAR Design Layouts, claiming "Avago's FBAR design layouts contained critical parameters that affect FBAR performance." Indictment at ¶18(k).  This is another example of an allegation alluding to a method, or in this case a "critical parameter" without providing any detail about those parameters.  If the use of "critical parameters" is the alleged trade secret, how can Professor Zhang defend against this allegation without specific information about those parameters?  If those "critical parameters" are copied within the PowerPoint presentation, then surely the government must be required to identify them.  As it stands now, Professor Zhang is required to defend against a claim that the PowerPoint presentation contains "critical parameters" that the government will not disclose to him.

<u>Counts 16 and 31</u>

Counts 16 and 31 of the Indictment allege that Professor Zhang stole Skyworks trade secrets and committed economic espionage when he emailed a "Skyworks PowerPoint presentation entitled 'Single to Balanced Circuits' and prepared on a PowerPoint template entitled 'Skyworks Template'".  Indictment at Count 16.   This allegation is repeated as an overt act in ¶30(qqq).  The term Single to Balanced Circuits is not defined in the Indictment.  While the government did provide the document in question, there is no description as to what the alleged Skyworks trade secret is in the 7-slide PowerPoint presentation.  ████████████ ███████████████████████████ *See* Brown Dec. at ¶13.  ███████████ ██████████████████████████████████████████████████████████ ████████████████████████████ *Id*. ████████████

*Id*.  It does not appear to be a Skyworks document.  Instead, it appears someone used a template from Skyworks which maintained the "Skyworks Solutions" information in the properties of the

document.  Professor Zhang does not have the ability to determine what the alleged Skyworks trade secret is by simply reviewing the document.  How can he determine if Skyworks took steps to protect the trade secret when he doesn't know what it is?  How can he determine if the alleged trade secret had independent economic value?  How can he prove that he did not steal this alleged trade secret when the only information the government provides to him is a PowerPoint presentation that doesn't appear to belong to Skyworks?  Further explanation from the government is necessary to prepare a defense to these allegations.

**Requests Regarding Overt Acts Unrelated to Substantive Counts.**

Overt Act ¶30(v)

In overt act 30(v), the government alleges that "[o]n September 11, 2008, Wei Pang emailed Hao Zhang the file 'WCDMA_TX_070803.gds' containing Avago trade secrets." Indictment at ¶30(v).  This is the sole mention of this file in the Indictment.  WCDMA stands for Wide-Band Code-Division Multiple Access, a 3G technology that is used in cell phones.  *See* Brown Dec. at ¶14.  This technology is not specific to Avago.  The government has provided the document to Professor Zhang, but he is unable to determine what the alleged Avago trade secret is in this file.  The government must have reviewed this file and determined that it contained Avago trade secrets.  It should be required to identify the alleged trade secret so that Professor Zhang can mount a defense.

Overt Act ¶30(x)

In overt act 30(x), the government alleges that "[b]etween October 25 and November 22, 2008, Hao Zhang emailed his co-conspirators the specifications and pricing for the Aviza AlN sputter deposition tool, the Omega AlN etching tool, and the Sigma deposition tool, all containing Skyworks trade secrets, in order to prepare to build an FBAR fabrication facility at TJU."

18

Indictment at ¶30(x).   The Indictment does not identify the portions of the documents that it claims

contain trade secrets.  The Indictment contains one other reference to these machines.  Specifically,

the government alleges that Skyworks trade secrets include:

> **(a) Recipes and Process for Deposition of AlN:** The key step in manufacturing Skyworks' filters was the deposition of AlN by sputtering. Skyworks developed uniform and **_precise deposition recipes and processes_** for AlN sputtering that directly affected the quality of BAW filters;
> **(b) fxP Tool Equipment Specifications:** Skyworks also developed **_precise specifications and customizations_** for the fxP tool Skyworks used to deposit AlN; and
> **(c) Omega AlN Etching Tool Equipment Specifications:** Skyworks used an Omega etching tool to etch the AlN after it had been deposited, and spent considerable time developing its etching process, including **_precise specifications and customizations_**.

Indictment at ¶20 (a-c) (emphasis added).

Presumably, the government contends in Overt Act 30(x) that the documents contained the

"precise deposition recipes and processes" for AlN sputtering, the "precise specifications and

customizations" for the fxP tool, and the "precise specifications and customizations" for the AlN

etching tool.   But, the government does not indicate what those recipes, specifications, and

customizations were or where they were found in the documents.  The agreement for the purchase

of the advanced metal sputter system, for example, is 36 pages long.  *See* Brown Dec. at ¶15. █

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id*. Does the government intend to prove at

trial that the entire agreement is a trade secret? █████████████████████████████

██████████████████████████ Machine manufacturers provide detailed specifications (recipes

and customizes settings) when they deliver and install machines for their customers. *Id*. at ¶16.

They do this depending on the customer's manufacturing requirements. *Id*. Fabricators like Skyworks may further customize those settings as they move through the fabrication process. The fabricator's fine-tuned settings, however, may apply only to their machine in their fabrication environment. *Id*. Professor Zhang may defend against the allegations in Overt Act 30(x) by showing that the specifications in the documents he sent were specifications provided by the machine manufacturer (meaning they were not Skyworks's trade secrets). Or, he may show that the fine-tuned settings were inapplicable outside of Skyworks specific manufacturing environment (meaning the specifications have no independent economic value). But, how can he defend himself when the government has not identified the specifications at issue? It is fundamentally unfair for the government to prosecute Professor Zhang on the grounds that he stole customized settings when the government has not identified those settings.

Overt Act ¶30(hh) and ¶30(ll)

The Indictment alleges that "Skyworks engineers often used PowerPoint presentations containing trade secrets during internal department/team meetings to explain and illustrate Skyworks' processes and test results" and that these internal PowerPoint presentations are trade secrets. *See* Indictment at ¶20(h). This overly vague and broad definition does not properly inform Professor Zhang of the alleged trade secret. This statement could describe almost any PowerPoint presentation that Skyworks ever created. Is the government planning to argue that Skyworks took the necessary steps to protect every PowerPoint presentation from within the company as a trade secret? There are two overt acts that refer to Skyworks PowerPoint presentations that are not charged in the substantive counts of the Indictment. The first is about Skyworks AlN and Molybdenum deposition (¶30(hh)) and the second is about Skyworks BAW and 2D recipe (¶30(ll)). Which slides in these PowerPoint presentations contain trade secrets? What specifically

are those trade secrets?  The government doesn't say, but it should be required to provide this information so that Professor Zhang can defend himself against these allegations.  The government should also be required to state whether it plans to prove that any other Skyworks PowerPoint presentation are a trade secret, based on the broad definition of the alleged trade secret in the Indictment.

Overt Act ¶30(ii)

The Overt Act at Indictment ¶30(ii) contains two separate and unrelated allegations that allegedly happened on the same date.  The first part of the allegation claims that Professor Zhang emailed a PowerPoint entitled "Planarization Rate at FBAR CMP" that included detailed photographs, screenshots, and specifications of Avago's CMP process.  Indictment at ¶30(ii). ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮ *See* Brown Dec. at ¶17.  I▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*.  Simply stating that CMP was a step used by Avago in their FBAR fabrication process does not inform professor Zhang of the alleged trade secret he supposedly stole.  The definition of CMP as an Avago trade secret offers little help: "CMP was one of the FBAR fabrication process steps performed by technicians at Avago."   Indictment at ¶18(j).   The government should be required to explain what slides contain the alleged trade secret in the CMP process.  Alleging that a PowerPoint presentation contains photographs and specifications of a process is not enough.  Is there a particular step in the process that Avago claims is a trade secret?  Will the government try to prove that the entire process is a trade secret?   Professor Zhang must be notified of the specific allegations so that he can prepare his defense.  Alleging that CMP was a fabrication process step performed by Avago and claiming that there are trade secrets hidden in an 18 page PowerPoint presentation is not sufficient.

The second allegation in this overt act claims that Professor Zhang emailed a screenshot containing Skyworks's process flow.  Indictment at ¶30(ii).  Similar to the reasons explained above, more detail is needed to put Professor Zhang on notice as to what he must defend himself against.  There is no definition of Skyworks's process flow as an alleged trade secret and there is no other mention of their process flow in the Indictment.  Claiming that Skyworks's process flow is a trade secret without any further information is simply not enough.

Overt Act ¶30(rr)

The Indictment alleges that one of Avago's trade secrets is its Ion Mill Etching Process and Trimming Code.  That alleged trade secret is defined as: "Avago's ion mill etching process was a unique FBAR fabrication process.  Avago maintained a machine-specific trimming code, or source code, that enabled a specific type of machine (a Roth and Rawl brand) to perform the ion mill etching process.   The trimming code and the specific type of machine were both essential components to Avago's ion mill etching process."  Indictment at ¶18(h).  The only specific allegation about the ion mill etching process claims that Wei Pang emailed Hao Zhang and others Avago's ion milling process specifications.  *See* Indictment at ¶30(rr).  Are those specifications a trade secret?  The definition claims that a machine-specific trimming code is important to the process.  The Indictment does not allege that Professor Zhang stole this trimming code.  So, what specifications were trade secrets?  As with the majority of the allegations in this Indictment this overt act does not provide Professor Zhang with enough information to mount his defense to this allegation.

Alleged Avago and Skyworks Trade Secrets

The Indictment contains definitions for nine alleged trade secrets without a related substantive count or overt act.  The four alleged Avago trade secrets are: Automatic Parameter

Testing (APT), Applications for Avago's FBAR Technology, Aluminum Nitride (AlN) Deposition Details, and High Tone Bulk Acoustic Resonators.  The Skyworks trade secrets are: Equipment Specifications Stored on Shared Drives, Wafer Chemical Quantity Calculation Recipes, Mask Layouts, Module Performance Data, and BAW Project Plans.

If the government intends to attempt to prove that Professor Zhang stole or conspired to steal these alleged trade secrets then it should be required to provide further detail about these trade secrets that are broadly defined in the Indictment.  What was the trade secret that Professor Zhang or his co-conspirators allegedly stole? Who stole it – Professor Zhang or someone else?  When did that person steal it?  How did he steal it?  Perhaps these references to other trade secrets are unnecessary.  But, to the extent the government seeks to prosecute Professor Zhang on the conspiracy charge for any alleged theft of these secrets, the government should be required – at the very minimum – to provide a bill of particulars with this information.

## CONCLUSION

For the reasons sets forth above, this Court should grant Professor Zhang's request for a bill of particulars.


Date:   July 15, 2016                    Respectfully submitted,


                                   */s/ Michael L. Brown*
                                   Michael L. Brown
                                   Attorney for Defendant Hao Zhang