Thomas J. Nolan (CA SBN 48413)
Daniel B. Olmos (CA SBN 235319)
Jonathan Baum (CA SBN 303469)
NOLAN BARTON BRADFORD & OLMOS LLP
600 University Avenue
Palo Alto, CA  94301
Tel. (650) 326-2980
Fax (650) 326-9704

Counsel for Defendant
Hao Zhang

Michael L. Brown (GA SBN 088875)
William R. Mitchelson, Jr. (CA SBN 124066)
Leanne Kantner (GA SBN 270935)
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA  30309
Tel. (404) 881-7000
Fax (404) 881-7777

Yitai Hu (CA SBN 248085)
ALSTON & BIRD LLP
1950 University Avenue, 5th Floor
East Palo Alto, CA  94303
Tel. (650) 838-2000
Fax (650) 838-2001

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>HAO ZHANG,<br><br>　　　　Defendant. | Case No. 5:15-cr-00106-EJD<br><br>**DEFENDANT HAO ZHANG'S NOTICE OF MOTION AND MOTION TO SUPPRESS POST-ARREST STATEMENTS**<br><br>Date: The parties request to set a date at the upcoming hearing on 11/30/2016.<br>Place: Courtroom 4, 5th floor<br>Dept: Hon. Edward J. Davila |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that as soon as the matter may be heard before the Honorable Edward J. Davila, defendant Hao Zhang will and hereby does move the Court to suppress statements made by Professor Zhang during a custodial interrogation at Los Angeles International Airport.  This motion is based on the instant notice, the memorandum of points and authorities, the attached exhibits, and the arguments made at the hearing.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION AND BACKGROUND FACTS**

On May 16, 2015, federal agents arrested Professor Hao Zhang at Los Angeles International Airport for the alleged theft of trade secrets. They arrested him as he arrived into Los Angeles from China. Professor Zhang was traveling with his wife to attend an academic conference in the United States. Professor Zhang was separated from his wife and taken to an interview room. He was then interrogated for three hours by Special Agents Young and Smith of the FBI.

At the beginning of the interrogation, the agents asked Zhang to read the FBI's pre-printed advice of rights form in English and Mandarin. The forms included statements notifying Professor Zhang that, if he could not afford an attorney, one would be appointed for him. In response, Professor Zhang told the agents that he could not afford an attorney. The agents then explained that Professor Zhang could have an appointed attorney *after* his initial appearance—making him believe that he could not have an attorney at the time of the interview. The relevant excerpt of the interview follows:

SA Young:   Okay. Alright. So that is that form and then here is the other form we need done. So as you've probably seen or heard this before, this is what we call Advice of Rights Form. You may be familiar where we advise people their rights for when they have been arrested and, so, as Agent Smith was telling you earlier, we're going through these forms. This is kind of the transition for us where we can continue or if you choose to invoke your rights then, you know, we will respect, then, of course respect your rights, and stop the interview. But, I'm going to have you read each one of these lines and just be sure you understand everything. So, can you read out loud for us?

Zhang:   Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have your lawyer with you during questioning. If you cannot afford a lawyer, one will be appointed for you before any questions, if you wish. If you decide to answer questions now without a lawyer present, you have a right to stop answering at any time.

SA Young:   Okay. And, do you understand those words?

Zhang:   Yeah.

Case 5:15-cr-00106-EJD   Document 119   Filed 11/22/16   Page 3 of 13

SA Young:   Okay, because we do, again, we do have a Mandarin form too if you'd like to read it in that, as well.

[SA Young hands Professor Zhang a Mandarin advice-of-rights card, which Zhang reads for about six seconds.]

Zhang:   **No, I cannot afford a lawyer.**

SA Young:   Well, ***if you can't afford one, after your initial appearance***, one may be appointed for you, but we want to make sure you understand these rights and what this means.

Zhang:   Yeah, yeah.

SA Young:   And, also too, just to explain to you that even if you want to go ahead and sign this now, meaning that you're willing to talk to us right now.

Zhang:   Yeah. Yeah. That's okay.

SA Young:   But, but, just so you'll know too, you can still, at any time, stop the interview --

Zhang:   Yeah. Yeah. Yeah.

SA Young:   -- okay, and choose not to talk with us anymore. So, just know that that's always . . . an option for you.

Zhang:   Okay.

Transcript of Post-Arrest Interview ("Transcript"), attached as Exhibit A, at 5–6 (emphases added).

    This exchange clearly shows that Professor Zhang did not understand that he had a right to an attorney at the time of the custodial interrogation. *See* Declaration of Hao Zhang, attached as Exhibit B, at 4. He sought clarification of his right to counsel from the FBI agents, saying he could not afford an attorney. Rather than saying that Zhang had the right to an attorney at the time of the interview (including, most importantly, to advise him whether to waive his right to remain silent and speak with the agents), Special Agent Young said that Zhang could have an appointed attorney only *after* his initial appearance. Professor Zhang is from China and is unfamiliar with the American justice system. The agents knew this, having arranged to arrest him upon his arrival from China. The government's

miscommunication of Zhang's *Miranda* rights renders his written waiver invalid and warrants the suppression of his post-arrest statement.

## II. LEGAL STANDARD

"The *Miranda* Court formulated a warning that must be given to suspects before they can be subjected to custodial interrogation." *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010). The first two *Miranda* protections concern a suspect's right to silence: "He must be warned prior to any questioning that he has the right to remain silent, [and] that anything he says can be used against him in a court of law." *Id.* (quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). The remaining two *Miranda* protections—that is, the right to have a lawyer "during questioning" and the right to court-appointed counsel—inform indigent individuals that they have a right to appointed counsel during interrogations, not just in court. *See Miranda*, 384 U.S. at 479 (requiring warnings concerning both the right to consult an attorney and the right to appointed counsel "prior to any questioning" where the arrestee cannot afford counsel).

A waiver of the right to counsel during such an interrogation is only valid if it is "voluntary, knowing, and intelligent." *United States v. Shi*, 525 F.3d 709, 727 (9th Cir. 2008). To provide such a waiver, an individual must act "with a *full awareness* of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Thompkins*, 560 U.S. at 382–83 (emphasis added) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). And courts must closely scrutinize the waiver of constitutional rights: "[t]here is a presumption against waiver, of which the Government bears the burden of overcoming by a preponderance of the evidence." *United States v. Crews*, 502 F.3d 1130, 1139–40 (9th Cir. 2007). To satisfy this burden, "[t]he prosecution must [show] that the accused understood these rights," including the right to appointed counsel. *Thompkins*, 560 U.S. at 384. Moreover, the question of whether a defendant understood his rights involves the totality of the circumstances. *Crews*, 502 F.3d at 1140. Courts in the Ninth Circuit thus examine, among other factors, the defendant's mental capacity, whether the defendant signed a written waiver, whether the defendant was advised of his rights through a translator, whether the defendant appeared to understand his rights, whether the defendant's rights were individually and repeatedly

explained to him, and whether the defendant had prior experience with the criminal justice system. *Id.* In cases where the arrestee is a foreign national, language barriers are highly relevant to a defendant's ability to understand his rights, too. *See United States v. Amano*, 229 F.3d 801, 804–05 (9th Cir. 2000).

### III. ARGUMENT

Special Agent Young affirmatively misled Professor Zhang into believing that, since he could not afford an attorney, he had no right to counsel at the time of the interview. Since Professor Zhang did not understand his constitutional right to counsel, he could not provide a voluntary, knowing, and intelligent waiver. His post-arrest statement, therefore, must be suppressed.

**1. Special Agent Young's "Initial Appearance" Statement Wrongly Informed Professor Zhang that He Had no Right to Counsel During the Interrogation.**

When Zhang first read the *Miranda* form out loud in English, Special Agent Young asked Zhang whether he understood his rights. With no elaboration, Professor Zhang replied "[y]eah." Transcript at 5. Special Agent Young, nevertheless, asked Professor Zhang to read the Mandarin form. *Id.*; *see also* Video of Post-Arrest Interview, submitted to the Court as Exhibit C, at Session 6, 11:25:33. After viewing the Mandarin form, Professor Zhang stated "[n]o, I cannot afford a lawyer." Transcript at 5. That answer was totally non-responsive to any pending questions and showed that Zhang did not understand his right to appointed counsel. He was clearly concerned that he could not afford counsel. He has explained in his declaration that he believed that, because he could not afford counsel, he was not entitled to counsel for the interrogation. *See* Declaration of Hao Zhang at 4. But, even at the time of the interview, the agents must have known that Professor Zhang was worried and confused about his right to court-appointed counsel.

The agents could have resolved the misunderstanding with little difficulty. All that they had to do was tell Zhang that he had a right to have an attorney during any government interrogation *and* that his inability to afford an attorney did not prevent him from having one before answering questions. But they chose not to provide this explanation. Instead, they

5

buffaloed right past Zhang's confusion, saying that he could get a court-appointed attorney after his initial appearance: "[w]ell, if you can't afford one, *after your initial appearance, one may be appointed for you*, but we want to make sure you understand these rights and what this means." *Id.* (emphasis added). Professor Zhang, again, responded "[y]eah, yeah." *Id.* Nor did either of the agents follow up to explain that Zhang's right to counsel, including appointed counsel, also extended to interrogations. Zhang clearly stated that he could not afford a lawyer. He could not have understood that his right to free, appointed counsel extended to the pre-appearance interview based on Special Agent Young's statement. Special Agent Young did indicate to Professor Zhang that he could stop the interview, but that explanation speaks to his right to silence, not his right to appointed assistance. *See* Transcript at 6 ("But, but, just so you'll know too, you can still, at any time, stop the interview."). Zhang's belief that he did not have a right to appointed counsel during the interrogation, therefore, went uncorrected.[1]

*Miranda* forbids an interrogation from proceeding on such a flawed basis. Indeed, the Supreme Court in *Miranda* recognized that "[t]he defendant who does not ask for counsel is the very defendant who most needs counsel. We cannot penalize a defendant who, not understanding his constitutional rights, does not make the formal request, and, by such failure, demonstrates his helplessness. To require the request would be to favor the defendant whose sophistication or status had fortuitously prompted him to make it." *See Miranda*, 384 U.S. at 471; *see also Sessoms v. Grounds*, 776 F.3d 615, 621–22 (9th Cir. 2014) (en banc) (summarizing the psychological pressures that the *Miranda* Court described). As a result, the Court held that "an individual held for interrogation must be ***clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation***."

---

[1] When viewed in connection with the cursory administration of the *Miranda* warnings, this failure to correct Professor Zhang's confusion over his right to appointed counsel during the interrogation is even more egregious. Before advising Professor Zhang of the *Miranda* warnings, Agent Young chose to review another form that Professor Zhang was required to sign, the notice to the Chinese Consulate of his arrest. Then, she immediately transitioned to discuss "the other form we need done," which was the advice of rights form, and stated that Zhang had "probably seen or heard this before." After qualifying the advice of rights form with those statements, Agent Young requested that Professor Zhang recite the *Miranda* warnings out loud, rather than reading him his rights. This perfunctory review of the *Miranda* warnings did not adequately advise Professor Zhang of his rights.

*Miranda*, 384 U.S. at 471 (emphasis added).  The warnings given to Professor Zhang did not satisfy this basic criterion.  As explained above, Special Agent Young's statement regarding Professor Zhang's initial appearance incorrectly stated that the right to counsel applied only at some time after the interrogation had been concluded.  After reading the English form and scanning the Mandarin translation, Zhang said "[n]o, I cannot afford a lawyer," indicating that he did not understand either form's explanation that he had a right to a lawyer at the government's expense and/or that he could invoke that right before he was interrogated by the FBI agents.  Transcript at 5.  Although Zhang next learned through Special Agent Young that "[a lawyer] may be appointed for you," the most reasonable inference from Special Agent Young's statement that this would happen "after your initial appearance" is that the right did not apply to the interrogation.  *Id.*  That, of course, is not the law.

The Supreme Court has already stated that police violate *Miranda* when they tie a suspect's right to counsel to some future court appearance.  In *California v. Prysock*, 453 U.S. 355, 358 (1981) (per curiam), the Supreme Court considered a *Miranda* warning that informed the defendant of his right to counsel at the time of the interrogation and the right to court-appointed counsel.  The warning, however, did not explicitly state that the defendant could have court-appointed counsel at the time of the interview.  *Id.* at 358–59.  The Supreme Court found that the warning was nevertheless valid.  *Id.* at 361.  In so doing, the Supreme Court noted that the police did not say anything to suggest that court-appointed counsel could only be provided in the future, after the interrogation.  It noted that "this is not a case . . . in which the offer of an appointed attorney was associated with a future time in court."  *Id.* (quotation omitted).  The Supreme Court indicated that police would violate *Miranda* "if the reference to the right to appointed counsel was linked with some future point in time after the police interrogation."  *Id.* at 360.  Such a linkage, the Court reasoned, would "not fully advise the suspect of his right to appointed counsel before such interrogation."  *Id.*

The Supreme Court in *Prysock* cited two cases to drive home its reasoning that *Miranda* forbids warnings that tie the appointment of counsel to a future event.  First, the Supreme Court cited *United States v. Garcia*, 431 F.2d 134 (9th Cir. 1970) (per curiam), as properly finding a

7

warning inadequate when it advised the defendant that she could "have an attorney appointed to represent [her] when [she] first appear[ed] before the U.S. Commissioner or the Court." *Prysock*, 453 U.S. at 360. Second, the Supreme Court cited *People v. Bolinski*, 260 Cal. App. 2d 705, 718 (1968)). In that case, the court rejected a *Miranda* warning informing a defendant that "if he was charged . . . he would be appointed counsel" and that he would be appointed counsel by a California court once he was transferred to that state. *Id.* The Supreme Court stated that the warnings in *Garcia* and *Bolinski* were inadequate because they improperly suggested that the right to counsel (including court-appointed counsel) did not attach until after the interrogation. *Prysock*, 453 U.S. at 360.

That is exactly what happened in this case. When confronted with Professor Zhang's statement that he could not afford an attorney, Special Agent Young said that Zhang could get a court-appointed lawyer in the future when he had his initial appearance in court—the very admonition that the *Prysock* Court held was improper. This statement violated *Miranda* and rendered Professor Zhang's waiver unknowing and unintelligent.[2]

This conclusion is not altered by the fact that Zhang read a correct version of the *Miranda* warnings in English and skimmed a Mandarin translation. Professor Zhang's reading of those forms occurred *before* his statement that he could not afford a lawyer and *before* Special Agent Young's explanation that Zhang could receive appointed counsel at his initial appearance. The Ninth Circuit has held that confusion resulting from one incorrect warning may taint a waiver even if the government also provides correct warnings at another point in time. Specifically, in *United States v. San Juan-Cruz*, 314 F.3d 384 (9th Cir. 2002), border

---

[2] Certainly, law enforcement need not convey the *Miranda* warnings with laser precision. *See Florida v. Powell*, 559 U.S. 50, 60 (2010) (noting that "[t]he four warnings *Miranda* requires are invariable" but that the "Court has not dictated the words in which the essential information must be conveyed"). This is not a case, however, where law enforcement adequately conveyed the gist of the warnings. Rather, this is a case in which a defendant was affirmatively mislead into believing that he would only have the right to counsel upon his initial appearance in court. Because Professor Zhang has no experience with the American criminal justice system, he could not know what his rights were without being clearly told so.

patrol agents arrested the defendant and advised him of his *administrative* rights, which includes the right to counsel but not the right to court-appointed counsel. *Id.* at 386. The police later advised the defendant that he could face criminal charges. *Id.* At that time, they gave him a complete *Miranda* warning, including the right to court-appointed counsel. *Id.* at 386–87. On appeal, the defendant argued that the government's explanation of his administrative warnings—including the statement that he did not have the right to appointed counsel—made the *Miranda* warnings confusing, as the two sets of warnings were inconsistent. *Id.* The Ninth Circuit agreed. *Id.* at 389. In relevant part, the court reasoned that "[f]rom [the defendant's] perspective, it was entirely unclear what the nature of his rights was under the Fifth Amendment. Specifically, [the defendant] could not reasonably ascertain from the warnings provided to him by the Government whether he could or could not retain the services of an attorney for free." *Id.* at 388. The Ninth Circuit held that "[w]hen a warning, not consistent with *Miranda*, is given prior to, after, or simultaneously with a *Miranda* warning, the risk of confusion is substantial, such that the onus is on the Government to clarify to the arrested party the nature of his or her rights under the Fifth Amendment." *Id.* at 389.

Other courts have also held that government agents must clarify a defendant's rights where the explanation of the rights was confusing or where the defendant asked a question about the rights. In *United States v. Al-Saimari*, 982 F. Supp. 2d 1285 (D. Utah 2013), for example, agents advised the defendant of his rights and asked whether he wanted to talk. The defendant said "I don't know, you know. I'm just surprised, you know." *Id.* at 1287. The agent then reiterated that he needed a "yes or a no" answer." *Id.* That follow-up response, according to the district court, was insufficient, rendering the *Miranda* warnings invalid. *Id.* at 1290–91. And in considering the implications of its decision, the court reasoned that "the Fifth Amendment merely demands that an officer ask follow-up questions as necessary to establish a knowing and voluntary waiver when, as was the case with Mr. Al–Saimari, a suspect expresses or manifests confusion, or fails to state affirmatively that he understands the *Miranda* warnings." *Id.* at 1292; *see also United States v. Botello-Rosales*, 728 F.3d 865, 867 (9th Cir. 2013) ("That officers had previously administered correct *Miranda* warnings in English to [the

defendant] does not cure the constitutional infirmity [in the defective warnings].").

The reasoning from those cases yields the same conclusion here. Special Agent Young did what the Supreme Court in *Prysock* said was improper—she tied Professor Zhang's right to court appointed counsel to a future court proceeding. Special Agent Young also made the same error that the agents made in *San Juan-Cruz*—she provided two inconsistent warnings without clarifying Professor Zhang's constitutional rights. Finally, she made the same error as occurred in *Al-Saimari*—when Professor Zhang expressed confusion about his warnings, she failed to ensure that Professor Zhang understood his rights. Professor Zhang's post arrest statement, therefore, must be suppressed.

### 2. *Duckworth v. Eagan* Is Inapplicable to the Facts of this Case.

The Supreme Court's decision in *Duckworth v. Eagan*, 492 U.S. 195 (1989), does not support a different conclusion. In that case, agents issued a *Miranda* warning notifying the defendant that a lawyer "will be appointed for you, if you wish, if and when you go to court." *Id.* at 198 (emphasis omitted). The defendant challenged that warning, citing the Supreme Court's holding in *Prysock* and arguing that the warning improperly tied the appointment of counsel to a future event. *Id.* at 205. The Supreme Court rejected the defendant's argument and upheld the validity of the *Miranda* waiver.

Importantly, the Supreme Court noted that the *Miranda* warning at issue contained other language notifying the defendant that, although he had a right to an attorney ***during the interview***, court-appointed counsel could not be obtained until his appearance in court. Specifically, the agents in *Duckworth* told the defendant that he had a right to an attorney during the questioning but that "we have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court." *Id.* at 198. In this case, Special Agent Young offered no such explanation. She did not explain that, although Zhang had a right to appointed counsel at the time of the interrogation, his right could not be effectuated until his court appearance. Instead, when Zhang explained that he could not afford counsel, Special Agent Young simply stated "if you can't afford one, after your initial appearance, one may be appointed for you"—making Professor Zhang believe that his right to an attorney arose

only *after* his initial appearance. She said nothing to make it clear that he had a right to counsel during the interrogation but court-appointed counsel was simply not available at the time. She made Professor Zhang believe that he had no right to court-appointed counsel until after his initial appearance.

And, it does not matter that the written *Miranda* warnings previously given to Professor Zhang stated that he had a right to counsel during the interview. Zhang clearly did not understand his right to counsel after reading them. His ability to afford counsel was the only issue that he raised. As explained above, when confronted with this obvious confusion, Special Agent Young was required to inform Zhang that he had a right to court-appointed counsel at the time of the interview but that counsel could not be appointed until later. She made no effort whatsoever to ensure that Professor Zhang understood this. Professor Zhang's question and Special Agent Young's inaccurate response prevents a finding that Zhang provided a knowing waiver.

*Duckworth* is also inapplicable because the warning in that case notified the defendant that, even though appointed counsel was not immediately available, he could still stop the interview until he could speak to counsel. Indeed, the Supreme Court identified this part of the warning in distinguishing *Prysock*. Specifically, the Supreme Court explained that *Prysock* was inapplicable because the *Duckworth* warnings notified the defendant that he had the right to counsel "before the police asked him questions" and because they "stated his right to stop answering questions at any time ***until he talked to a lawyer***." *Id.* at 205 (internal quotations omitted; emphasis added). In this case, Special Agent Young's *ad hoc* explanation of Professor Zhang's rights did ***not*** include this information. She made it appear that Zhang had the right to a lawyer only after his court appearance, rather than at the time of the interview. And, she totally failed to notify him that he could stop any interrogation until he talked to a lawyer. Special Agent Young said that Zhang could stop the interview at any time. (That is, that he had the right to remain silent.) But, she did not say that he could do so for the purpose of speaking with a lawyer. (That is, that he had a right to counsel during the interrogation.) This omission—following her statement that Zhang could only have a court-appointed attorney after

11

his initial appearance—reaffirmed Professor Zhang's inaccurate belief that he had no right to court-appointed counsel at the time of his interrogation. And again, the government cannot rest upon the previous written warnings as Professor Zhang clearly did not understand them and Special Agent Young's explanation was misleading.

Finally, there was no evidence in *Duckworth* that the defendant had any difficulty understanding English. Professor Zhang, on the other hand, was born and raised in China. His primary language is Mandarin. The fact that Special Agent Young explained Professor Zhang's right to counsel in English, therefore, only made matters worse. Professor Zhang questioned his right to counsel after reading the Mandarin advice-of-rights card, indicating that he did not understand the English form. The Ninth Circuit has recognized that language barriers present challenges above-and-beyond the normal pressures of an inherently coercive interrogation. *See Amano*, 229 F.3d at 804–05 (listing additional factors that courts must consider where language difficulties are present). In cases where a foreign national challenges the adequacy of *Miranda* warnings, courts incorporate into the analysis factors such as "whether the defendant signed a written waiver; whether the advice of rights was in the defendant's native language; whether the defendant appeared to understand those rights; [and] whether the defendant had the assistance of a translator." *Id.* (quoting *United States v. Garibay*, 143 F.3d 534, 538 (9th Cir. 1998)). Also relevant, according to *Amano*, is "whether the defendant's rights were explained painstakingly . . . and whether the defendant had experience with the American criminal justice system." *Id.*

Professor Zhang does not suggest that the language barrier was so great that it alone would warrant suppression. But, his inability to fully understand the nuance of his constitutional rights as a result of his difficulty understanding English made the inaccurate warning that Special Agent Young provided all the more problematic. The agents must have known this and certainly had an obligation to avoid it. They knew Zhang was a Chinese national and that he was living in China. They knew when they were going to arrest him. They had a Mandarin form available, indicating they anticipated a possible language barrier. But, they made no effort to obtain an interpreter. The video recording shows that Professor Zhang

had difficulty understanding the agents. He offered the response "yeah" to almost every question. Nevertheless, Special Agent Young made no effort to ensure that Professor Zhang understood his constitutional rights. Instead, she interrupted him repeatedly to push him along into waiving his rights. The agents knew that Zhang had no experience with the United States criminal justice system. It is clear at the start of the interview that Professor Zhang has no idea what is happening to him. This is re-affirmed at the end of the interview when Professor Zhang first realizes that he has been arrested. The Ninth Circuit in *Amano* indicated that courts must consider whether the government "painstakingly" explained a defendant's rights. 229 F.3d at 805. That certainly did not happen here, as Special Agent Young offered a confusing and misleading statement regarding Zhang's right to counsel.

A waiver can never be knowing and intelligent if the government obfuscates the scope of a critical *Miranda* right. In light of the agents' complete failure to explain Professor Zhang's rights, Special Agent Young's affirmatively misleading statement, and Zhang's lack of familiarity with the criminal justice system, the government cannot satisfy its burden of proving that it adequately informed Zhang of his right to have counsel at his side during the interrogation. Professor Zhang respectfully requests a hearing so that he can present testimony on these matters as well as additional testimony concerning his confusion at the time of the defective *Miranda* warnings.

### IV.   CONCLUSION

For the reasons stated above, the Court should suppress all statements that Professor Zhang made during his custodial interrogation on May 16, 2015.

Date:   November 22, 2016          Respectfully submitted,


                                   */s/ Michael L. Brown*
                                   Michael L. Brown
                                   Attorney for Defendant Hao Zhang

13